IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. | NO. 10-731-2 |
| : | |
| MICHAEL JOHNSON | |

**MEMORANDUM**

Jones, II   J.                                                                                                           April 8, 2015

### I.     Introduction

Petitioner Michael Johnson brings the instant Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 159) under 28 U.S.C. § 2255.  In doing so, Petitioner makes several claims of ineffective assistance of counsel and trial court error with regard to both his guilty plea and sentence.  For the reasons set forth herein, Petitioner's Motion will be denied.

### II.     Factual and Procedural History

Petitioner was indicted for his involvement in a prostitution ring between June 1, 2008 and June 30, 2010. The ring, which was organized by Co-defendant Paul Sewell, was located in Reading, Pennsylvania.  On September 7, 2011, Petitioner entered a guilty plea to one count of sex trafficking, in violation of 18 U.S.C. § 1591 and aiding and abetting, in violation of 18 U.S.C. § 2.  During his guilty plea and sentencing proceedings, evidence of Petitioner's mental illness was presented.  In particular, during his guilty plea colloquy, Petitioner informed the court that he suffered from Bi-polar Disorder, Post-Traumatic Stress Disorder and severe depression. In addition, he told the court that he had taken prescribed medication the morning of the plea. Petitioner was questioned extensively about these issues and gave no indication that he was

1

unable to understand the nature of the proceeding or the consequences that would arise therefrom.

In anticipation of Petitioner's sentencing proceedings, he submitted a Psychological Evaluation prepared by Dr. Frank M. Dattilio, who evaluated Petitioner on May 9, 2011—prior to his guilty plea. Although Petitioner was diagnosed with various mental health issues, his competency to enter a plea was not at issue.  However, after being sentenced, Petitioner filed an appeal to the Third Circuit, claiming his appellate waiver was invalid because of his mental state. The Third Circuit rejected his claim and summarily affirmed judgment.  Petitioner then filed the instant Motion, claiming various instances of allegedly ineffective assistance of counsel, abuse of discretion by the court, and breach of the plea agreement by the government.  Part and parcel of Petitioner's claims is his allegation that his appellate waiver was invalid because it was made unknowingly and involuntarily.[1]

### III. Discussion

#### A. Competency[2]

"A criminal defendant whose competency is in question may be subjected to a competency hearing." *United States v. Seeley*, 574 F. App'x 75, 81 (3d Cir. Pa. 2014) (citing 18 U.S.C.S. § 4241(a)), *cert. denied*, 2015 U.S. LEXIS 1164, 83 U.S.L.W. 3679 (U.S. Feb. 23, 2015).  "A motion for a competency hearing under 18 U.S.C. § 4241(a) should be granted when there is a reasonable doubt as to the defendant's ability to consult with his lawyer with a reasonable degree of rational understanding, or a reasonable doubt as to his ability to understand

---

[1] Subsequent to the filing of his original Motion, Petitioner filed a "2255 Amendment" (ECF No. 180), in which he claims ineffective assistance of counsel regarding a calculation contained within the Presentence Investigation Report.

[2] As previously noted, Petitioner raised competency issues in his appeal to the Third Circuit, who summarily affirmed judgment. (Doc. No. 157.)  However, for the sake of thoroughness, this Court shall address same.

the proceedings rationally as well as factually." *United States v. Renfroe*, 825 F.2d 763, 766-67 (3d Cir. 1987) (citations omitted). The trial court may conduct a competency hearing on its own if neither the defendant nor the government moves for such a hearing. *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998) (citing 18 U.S.C.S. § 4241(a)). "To do so, however, the trial court must have 'reasonable cause' to believe that the defendant is 'presently' suffering from an impairment resulting in mental incompetency." *Id.*

"A defendant is competent to stand trial if (1) the defendant has the present ability to consult with [defense counsel] with a reasonable degree of rational understanding and (2) the defendant has a rational as well as factual understanding of the proceedings." *Leggett*, 162 F.3d at 242 (internal quotations omitted) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)) (citation omitted). Whether a defendant satisfies this two-prong test depends on a number of factors, including: "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." *Leggett*, 162 F. 3d at 242 (alterations in original) (quoting *Drope*, 420 U.S. at 180); *see also United States v. Speight*, 554 F. App'x 119, 122 (3d Cir. 2014), *cert. denied*, 134 S. Ct. 2743, 189 L. Ed. 2d 778, 2014 U.S. LEXIS 3995 (U.S. 2014). However, "[t]here is no predetermined formula for making a finding of reasonable cause." *Leggett*, 162 F.3d at 242. "[T]here are . . . no fixed or immutable signs which invariably indicate the need for [a competency hearing]." *Id.* "A court must simply look at the unique circumstances of the case and decide whether the defendant (1) has the capacity to assist in his or her own defense and (2) comprehends the nature and possible consequences of a trial. If either prong is not met, a court has reasonable cause to order a competency hearing." *Id.*

Having personally witnessed Petitioner's demeanor first-hand, it was unequivocally clear to this Court that there was no reasonable cause to believe Petitioner was suffering from a mental impairment that rose to the level of incompetency at the time he entered his guilty plea.

As such, there was no reasonable cause for either Petitioner's counsel or this Court to believe that a competency examination was necessary before accepting his guilty plea.  While Petitioner suggests that his mental health issues and medication - which he took the morning of the plea hearing - affected his ability to enter his plea knowingly and voluntarily, the record demonstrates otherwise.  After informing the court that he had taken his prescribed medication the morning of his plea hearing, this Court conducted the following colloquy:

> COURT: Now, sir, as a result of your prior mental health treatments and your current medications, is there anything that you don't understand about what I've said to you thus far?
>
> DEFENDANT: No, I understand everything.
>
> COURT: Do you fully understand what you're doing here today?
>
> DEFENDANT: Yes, I do.
>
> COURT And you understand, I'm sure, because you've discussed this with your counsel, Mr. Cooper, that you're going to be giving up an awful lot of rights to enter a plea of guilty?
>
> DEFENDANT: Yes.

(Plea Hr'g Tr. 6:17-7:5, Sept. 7, 2011.)

Petitioner's answers to the above questions clearly demonstrate he had a rational—as well as factual—understanding of the proceedings.

This Court also observed Petitioner's ability to consult with his attorney with what appeared to be a reasonable degree of rational understanding.  After the government summarized the facts it would have been able to prove had the case gone to trial, Petitioner was asked if he

fully admitted to all of those facts.  At that moment, he asked to speak with his attorney.  As a result of Petitioner's conversation with his attorney, counsel for the government was prompted to make modifications to the previously summarized facts.  (Plea Hr'g Tr. 29:11-30:9.)

Petitioner suggests his history of mental illness necessarily rendered him incompetent and should have prompted the court to subject him to a competency examination.  However, "it does not follow that because a person is mentally ill [that person] is not competent to stand trial." *Leggett*, 162 F. 3d at 244 (quoting *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996)) (citation omitted).  While "a trial court may consider a defendant's history of mental illness, it must properly focus its inquiry [on the defendant's] mental state at the time of the [proceeding]." *Leggett*, 162 F.3d at 244 (quoting *USA v. Morgano*, 39 F.3d 1358, 1374 (7th Cir. 1994)); 18 U.S.C.S. § 4241(a).  "That is, the defendant's mental impairment must render the defendant "presently" unable to understand the nature and consequences of the proceedings." *Id*.  In light of Petitioner's responses during the colloquy, there was nothing to indicate he was unable to understand either the nature or consequences of the proceedings prior to entering his plea of guilty.  There was also no indication that Petitioner's mental illness prevented him from consulting with his counsel with a reasonable degree of rational understanding.  Therefore, his claims that counsel was ineffective for failing to have him undergo a competency examination before he pled guilty and that this Court abused its discretion by not ordering a competency examination *sua sponte*, are without merit.  In addition, because Petitioner's plea of guilty was made knowingly and voluntarily, his appellate waiver is valid and all issues pertaining to trial

counsel's alleged ineffectiveness before and during the plea, as well as all issues pertaining to this Court's alleged abuse of discretion at the time of the plea, must be deemed waived.[3]

### B. Non-Competency-Related Ineffectiveness and Abuse of Discretion Claims Pertaining to Change of Plea

As referenced above, Petitioner raises several additional pre-plea and plea claims of ineffectiveness against trial counsel, including failure to properly explain Petitioner's right to a valid indictment and jury trial before he made the decision to plead guilty, failure to move to dismiss the indictment, failure to produce Grand Jury documents that would have allegedly shown perjury and divested the court of jurisdiction, failure to conduct an adequate investigation, failure to request a lesser-included offense, forcing Petitioner to sign the plea agreement, failure to explain the guilty plea waivers, and failure to be forthcoming with *Brady*, Jencks Act and *Giglio* materials/failing to send letter by co-defendant.[4]  Petitioner further claims this Court

---

[3] This Court thoroughly explained to Petitioner the appellate rights he was agreeing to waive and asked him if he understood the limitations of his right to appeal, to which Petitioner answered, "Yes, I understand." (Plea Hr'g Tr. 22:8-23:6.) After confirming Petitioner had no questions regarding his appellate waiver, this Court, for a second time, asked him a series of questions to determine whether or not he understood his appellate waiver, to which he responded affirmatively. (Plea Hr'g Tr. 23:10-24:3.)

[4] Specifically, Petitioner claims counsel was ineffective for failing to "send" a letter written by Petitioner's co-defendant, which disclosed said co-defendant's involvement in the operation of the prostitution ring. (Doc. No. 159 at 15.) According to Petitioner, defense counsel's failure to send this letter constitutes violations of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500(b). However, *Brady*, *Giglio*, and the Jencks Act do not govern defense counsel's conduct. *Brady* delineates the prosecution's obligation to disclose any evidence that is favorable to the defendant. *Brady,* 373 U.S. at 87. *Giglio* extends *Brady*'s application to agreements made between the prosecution and its accused witnesses. *Giglio*, 405 U.S. at 154. With regards to the Jencks Act, it states in relevant part, that "After a witness called by the . . . [government] has testified on direct examination, the court shall, on motion of the defendant, order the . . . [government] to produce any statement . . . of the witness in the possession of the . . . [government] which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). In sum, defense counsel's failure to send a co-defendant's letter does not fall within the purview of *Brady*, *Giglio*, or the Jencks Act. Moreover, as the government correctly notes, the letter at issue was the topic of a newspaper article that appeared in the *Reading Eagle* on November 22, 2010 and was therefore available to both sides

abused its discretion by failing to ensure there was a valid indictment and factual basis for the plea.

All of these claims must be deemed waived. The following excerpt from the proceeding demonstrates that when Petitioner was given an opportunity to present his concerns regarding his counsel's services, he instead expressed satisfaction with his counsel's representation . . .

| | |
|---|---|
| COURT: | All right. Now, sir, have you received a copy of the indictment? |
| DEFENDANT: | Yes. |
| COURT: | Did you read it? |
| DEFENDANT: | Yes, I did. |
| COURT: | Has your counsel gone over the charges against you and fully explained to you your trial rights and defenses? |
| DEFENDANT: | Yes. |
| COURT: | Has your counsel answered all of your questions about the indictment and what it means? |
| DEFENDANT: | Yes. |
| COURT: | As you sit here today, do you have any questions about the indictment or what it means? |
| DEFENDANT: | No questions. |
| COURT: | Are you satisfied with the representation that Mr. Cooper has provided you up to this point in time? |
| DEFENDANT: | Yes, I am. |

(Plea Hr'g Tr. 7:16-8:9.)

---

at that time. As such, any allegations of a conspiracy by trial counsel and the government to hide the information from Petitioner are unfounded. Most importantly though, the letter did not exonerate Petitioner; it was simply a series of self-incriminating statements by his co-defendant. Accordingly, no prejudice resulted from counsel's alleged failure in this regard.

With specific regard to Petitioner's claim that his appellate waiver was not made knowingly and voluntarily, the record clearly shows otherwise:

| | |
|---|---|
| COURT: | Sir, has anyone threatened you, in any way, for you to plead guilty? |
| DEFENDANT: | No. |
| COURT: | Has anyone promised you anything other than perhaps what's within a written plea agreement, were you to plead guilty? |
| DEFENDANT: | No. |
| COURT: | Are you doing so voluntarily and of your own free will? |
| DEFENDANT: | Yes. |

(Plea Hr'g Tr. 7:6-15.)

| | |
|---|---|
| COURT: | There are a number of constitutional rights that you are waiving or giving up by pleading guilty. I'm going to go over those with you, at this time. |
| | Do you understand that you have the right to plead not guilty and have your case tried by a jury of your peers, 12 persons or by a judge, sitting alone? |
| DEFENDANT: | Yes, I understand. |

(Plea Hr'g Tr. 19:4-10.)

| | |
|---|---|
| COURT: | Now, sir, do you understand that if you were found guilty, you could file an appeal after a jury found you guilty or after a trial judge, after a trial, found you guilty, you could appeal to a higher court which could set aside or modify that finding of guilt or even grant you a new trial? |
| DEFENDANT: | Yes, I understand. |
| COURT: | And do you understand that by pleading guilty and entering into this plea agreement, you're giving up or waiving all those rights? |

8

    DEFENDANT:  Yes, I understand.

(Plea Hr'g Tr. 21:22-22:7.)

    Confident that Petitioner understood the facts and consequences of the proceedings, this Court accepted his guilty plea. Review of the record *in toto* simply reiterates the fact that Petitioner knowingly and voluntarily waived his rights. Accordingly, no relief is warranted on any of Petitioner's pre-plea or plea-related claims, as the same have been waived.

### C. Claims of Ineffectiveness and Abuse of Discretion at Sentencing

    Lastly, Petitioner contends trial counsel failed to object to the Guidelines range,[5] permitted a "breach" of the plea agreement regarding a sentencing departure, and failed to argue sentencing disparity. Also with regard to sentencing, Petitioner alleges this Court abused its discretion by not referencing the details of Dr. Dattilio's Evaluation at the time of sentencing and by imposing an unduly harsh sentence. Despite the fact these issues are barred from further review by reason of a valid appellate waiver[6] and do not fall into any of the exceptions thereto,[7] each shall be addressed in turn.

    Contrary to Petitioner's allegations, counsel made three objections to enhancements involving United States Sentencing Guidelines 2G1.3 (b) (1) (B), 3A1.1 (b) (1), and 3B1.1 (b). These objections were sustained by this Court and Petitioner's offense level was accordingly reduced. (Sentencing Hr'g Tr. 14:8-13, February 20, 2013.) Any further objections by counsel would have been meritless, as this Court thoroughly reviewed the Presentence Investigation

---

[5] In an "Amendment" to his Motion filed on February 9, 2015 (Doc. No. 180), Petitioner claims ineffectiveness for counsel's alleged failure to have the point calculation in the Presentence Investigation Report changed.

[6] Petitioner's plea agreement limited his right to appeal or collaterally attack his "conviction, sentence, or any other matter relating to this prosecution, whether such right to appeal or collaterally attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, *28 U.S.C. § 2255*, or any other provision of law." (Plea Agreement ¶ 9)(emphasis added).

[7] *See* Plea Agreement ¶ 9(a)-(b).

Report and found it to be accurate in every other respect.[8] Again, Petitioner's counsel cannot be deemed ineffective based on his alleged "failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) (citations omitted).

Petitioner next claims counsel was ineffective for failing to argue disparity in sentencing based upon comparison of Petitioner's case to that of Police Officer Ronald Miko. After pleading guilty to charges of Obstruction of a Criminal Investigation and Aiding and Abetting, Officer Miko was sentenced to 38 months imprisonment and three years of supervised release. Pursuant to 18 U.S.C. § 3553(a)(6), courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records." Here, the differences between Petitioner's sentence and that of Officer Miko were wholly warranted, given the different crimes for which each was being sentenced and their respective criminal histories. The argument suggested by Petitioner is meritless and counsel cannot be deemed ineffective for failing to raise this issue. *See Sanders*, 165 F.3d at 253.

With regard to Petitioner's allegations of sentencing errors by this Court, the government's motion for a downward departure pursuant to § 5K1.1 of the Sentencing Guidelines was in fact granted and in employing its discretion, this Court departed eight advisory guideline levels downward. Petitioner's final adjusted offense level was 34 with a criminal history category of 2. The Guidelines advise 168 to 210 months imprisonment; this Court sentenced Petitioner to 204 months imprisonment, which is well within the guideline range. Accordingly, there was no abuse of discretion by this Court.[9]

---

[8] This Court further notes that Petitioner was thoroughly colloquied to confirm he read the Presentence Investigation Report and discussed same with his attorney prior to sentencing. (Sentencing Hr'g Tr. 7:1-13.)

[9] Although not specifically set forth in his Motion, Petitioner alludes to the fact that the government somehow breached the plea agreement with regard to its Motion for Downward

Finally, with regard to Petitioner's claim that this Court failed to reference the details of Dr. Dattilio's Evaluation during sentencing, the same is wholly without merit. In preparation for Petitioner's sentencing proceeding, this Court thoroughly reviewed Dr. Dattilio's Evaluation. Trial counsel presented Dr. Dattilio as a witness at sentencing, during which time, this Court was able to hear first-hand account of Petitioner's mental health history and status. All of this is of record; no purpose would have been served by further reiterating the details of the doctor's Evaluation, which was entered into evidence[10] and duly considered by the court.

### IV.   Conclusion

For the reasons set forth hereinabove, Petitioner's Motion shall be denied in its entirety. An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
_____
C. Darnell Jones, II    J.

---

Departure. Inasmuch as Petitioner's Plea Agreement sets forth the government's entire obligation with regard to the pursuit of appropriate departures and the government has not breached same, this issue is completely unfounded. (Plea Agreement ¶ 3.) Moreover, during the Change of Plea Hearing, this Court explained that any agreement and/or stipulations reached between Petitioner and the government and made a part of the formal Agreement were not binding upon the Probation Office or the court. (Plea Hr'g Tr. 18:14-23.) Petitioner confirmed that he understood this, as well as the fact that he could potentially receive a sentence up to the maximum permitted by law. (Plea Hr'g Tr. 17:25; 18:1-8; *see also* Plea Agreement ¶ 4.) Therefore, any issue regarding the extent to which any departure was sought or granted is without merit, as it has been waived.

[10]   *See* Sentencing Hr'g Tr. 20:25; 21:1-4, Ex. D2.